He said, OK, you understand the issues they had out of filing, they had responded out of filing, you understand what the issues are, we're going to have a hearing. Bring experts if you want to bring experts. And that's what the parties did. And if you can't do that, if the answer is, no, you have to have a schedule for experts, they have to have time for rebuttal experts, then you're having the same proceeding again. That's the contention, is that this didn't lend itself to a summary proceeding before Judge Posner, that there were lots of experts involved. We recognized in our past cases that where there are conflicting experts, it's probably not appropriate for a summary proceeding. So the question is, because of all this conflicting expert reports and the need to have rebuttal expert reports, it shouldn't have been done summarily. That's certainly one way to look at it, and I understand that would be the issue. I think that's perfectly well stated. What Judge Posner was saying, and what you have to rebute for the abuse of his discretion, is that he gave the parties a chance, that everybody showed up there on August 30th, and that their intent, I think, was to make it as cumbersome as possible so that they can get out from underneath a summary proceeding and get a second bite with a second set of experts in front of a second judge. What Judge Posner was doing was saying, I've already ruled on this case, or Abbott has alleged that I've already ruled on this case. You've got experts, you know the sameness issue has been at stake in front of Judge Ballmeyer for months. You know those things. I'm going to hold a hearing in two weeks. Come on in here and bring your experts to show. They brought experts in to show, and those experts, I mean, they were terrible. They failed miserably. Why they should be given another chance to, oh, we're going to lob some more experts over the transom, is it? And they go, now that we know sameness is an issue, they knew sameness was an issue when they got New Farm to be their stalking horse. They knew sameness was an issue when they tried to limit the way he wrote his original injunction, and this was all a plan by them to get a second bite at the apple. And if this court holds that anytime you can bring a scientist in with some different results, then it's not subject to a summary proceeding, then realistically, and Judge Posner says this at the end of his opinion, realistically, you will never be able to summarily enforce a proceeding in a complicated drug, in a hash ratcheting case. You'll never be able, no matter how much the same it is, you're always going to, they have one of their experts, there's an entire spectrum in the IR, and one of their experts goes, you see this one bump? There's a little shoulder on this one bump, so I'm telling you it's not the same. The point isn't whether the August 31st expert testimony was weak or not weak. The point is whether they were entitled, as a matter of fairness, to submit some additional expert evidence, if they did it very quickly, which they did only a week later, but he wouldn't allow it, apparently not because it was irrelevant or fraudulent or anything like that, but because it was late. Yeah, and I think that what you've, there's two things he's doing. One is he's saying, I conducted a summary proceeding, as I believe I'm supposed to be able to do, when I found, when I'm not questioning at the moment, whether the proceedings had to be a full trial in front of Pallmeyer or a summary proceeding in front of Posner. I'm assuming that it can be a summary proceeding in front of Posner, but it still has to be a proceeding that meets minimum fairness and doesn't involve elements of surprise. I had the recollection, maybe it's quite inaccurate, but I had the comment that Judge Posner made at the end of the proceeding that caught them by surprise and led to the two later experts. If that recollection is correct, then it's not fair to say, well, they should have known between August 15th and the hearing on the 31st that they better bring those other two witnesses because the other two witnesses addressed a point they didn't even think was relevant until after Judge Posner made a comment at the end of the evidence. It may well be that that's what the defendant was trying to say, so you may have read that somewhere. In my judgment, nothing could be further from the truth. The only issue that was at stake in the hearing before Judge Posner, after you get past identity of parties, New Farm and Epitex, which we got past before we ever showed up for the hearing, based on our filings and the admissions and the depositions, the only issue before Judge Posner in our view was sameness. Was the Epitex New Farm product the same as the Epitex Tor Farm product? That issue had been an issue before Judge Pallmeyer, and Judge Pallmeyer had indicated, I am going to answer that issue first by way of attempt to try to sort out collateral estoppel. So when he says we're having a hearing in two weeks, there is no surprise to them that that hearing is about sameness. Sameness of what to what? The sameness of the product that Epitex Tor Farm, that had been previously adjudicated by this court and by Judge Posner as infringing, is the same as the product that Epitex had given to New Farm to file a new entry. If they were the same, that was the issue we raised, and couldn't have been any clearer from our reefs. Take a look at our reef. You couldn't have shown up for that hearing on August 31st and not known that the whole thing was about whether or not Epitex had taken the same product, cooked it a different way, ended up with the same thing, and had a stalking horse file a new entry. And the question was, are we going to let that happen or not? And I agree with you that Judge Posner owes them fundamental fairness in deciding that issue. But fundamental fairness was, and I think he says this, was more than met by them getting our brief, the issue pre-existing with Judge Pallmeyer, them coming in with three experts, which Judge Posner listened to, heard the three experts out, and then found, and I think it's worth looking at what they were offering, that their expert testimony on the issue was terrible. He holds it has no probative value. When did they get your expert reports that you submitted in the course of the contempt proceeding? We submitted only an expert report in the course of Judge Pallmeyer. So our expert report was the same day as their expert report, July 31st of 2006. Same day they submitted their expert report. So nobody had any warning to speak of on paper before they walked in to the courtroom on the 31st with the respective expert witnesses, other than that the subject was the sameness of the two problems. Well, we only brought the expert whose expert report they had. They had all the notice that they could possibly ask for from us in the sense that we brought Dr. Jerry Atwood, who had provided the expert report on July 31st. If you're surprised . . . Yeah, but he wouldn't be bound by that report in terms of the scope of what he said in front of Judge Posner. He could have said anything he thought he had a basis for saying, whether it was within the scope of his Pallmeyer expert report or not. No, but he did. His expert report in front of Judge Pallmeyer addressed sameness because it was an issue in front of Judge Pallmeyer. So when he moved over to testify in the summary proceedings before Judge Posner, he was addressing sameness. So the expert report covered what he had to say. The surprise, if there was any, by the summary proceeding was that we had to deal with two experts, I think one of whom we didn't really know was appearing until the day before they appeared and had no paper on, Dr. Seema. And the other one, Dr. Stevens, who comes in without any expert report, but who had been working on the case for a while and addresses the issues and, as Judge Posner holds, helps our case. Yeah, but the issue isn't how strong was your proof, how weak was their proof. The only issue that I can see here is whether the refusal to give them a week to submit additional technical evidence denied fairness. But I think that's a fair question. And what I'm suggesting to the Court is, if you look at the full rhythm of what happened, sameness is a focused issue in front of Judge Pallmeyer. Well, I understand. Or legal file expert reports. You've said that many, many times. We've got that in mind. And so we show up in front of the Court. The Court says, I'm having my summary proceeding that the law says I'm supposed to have to find out whether or not you've actually done an end run and brought the same thing in front of, you know, an audit over there with no reason to believe it's any different. We both show up with our experts. They show up with three, two of whom don't have expert reports. You know, five in the other case. We show up with one who has an expert report addressing sameness. If there's any surprise, it's, you know, Mr. Winchester, who has to cross-examine Dr. Seema without ever having seen, you know, anything written on the back of a postcard from him. And we proceed to the summary proceeding, wherein the only evidence, their position is it's not the same. They've got a sameness position. Their position, surprise, surprise, it's not the same because it's not an oligomer based on Hearst House's single crystal X-ray. The same old issue. And they're convinced that it can never be an oligomer. So Judge Posner basically looks and says, okay, so you brought this guy. He's going to tell me it's not the same because, which was their position in front of Judge Pallmeyer. It's not the same because it's an oligomer. Okay. Well, and that's because Barry Sherman thinks it can never be an oligomer. So it can never be an oligomer. So he hears it all out. He finds the R-factor wrong. He finds everything wrong about the test. The ratio is wrong. The expert admits that if the ratio is lower than 5 to 1, nobody would rely on this. We prove it's 2.15 to 1. The R-factor is way off with respect. Then Stevens testifies. He testifies that no, no, it is an oligomer and makes it so that the proof that they bring is slaughtered. Well, that may be. I don't think that's the issue. The only issue is whether they were entitled to a weak window to bring some further proof. But, but I guess what, what also is going to happen, I assume that if you can bring it, and what Judge Dyke suggests in his question is, if you bring another three or four experts, which they tried to do, some of them, if you read what they say, they don't actually bear on anything, but set that aside. Well, then you would win. I mean, the consequence of that is, we would not win a summary hearing. Sure you would. Sure you would. Well, we're going to have to, we're going to have to let those people testify if they have things to say about this. It's still summary. You know, it's not going to be like a normal infringement trial. But, but I think, I think Judge Dyke suggested to me a few moments ago, that if you bring a whole bunch of experts and they all get to testify, you're outside the summary proceeding. And my suggestion is you can't have it both ways all the time. If you have the same guys, albeit through subterfuge, bringing the same product, and you catch them at it, and you say, okay, I'm having a summary proceeding, on whether it's the same product. Don't, don't, don't repeat all, all of what you said over and over and over. That's not getting us anywhere. Fair enough. Let's hear, let's hear rebuttal. I, I, we've given you lots and lots of extra time. Thank you. First, the issue of sameness was not before Judge Pallmeyer. There was no issue before Judge Pallmeyer as to whether the New Farm product was the same as the Torfarm product. And that's not something that shows up in a typical Hatch-Waxman Act. It's not something that shows up in any traditional patent infringement action. You don't compare the accused product to a commercial embodiment. So sameness was not an issue in the New Farm litigation. I wanted to give you the dates of when things were due before Judge Pallmeyer. This is at age 68 in the record. Documentary number 99. The pretrial schedule, initial expert reports, and this is where the party had the burden of proof. So for us, it was invalidity. For them, it was infringement, to be exchanged 7-3106. Responsive expert reports, exchanged 8-2806. Rebuttal expert reports, 9-1406. Close of expert discovery, 10-1306. When it came to the proceedings before Judge Posner, they were styled as contempt proceedings. Sameness is an issue in contempt proceedings. Sameness is not an issue in a traditional patent infringement analysis where you're comparing the product to the claims. If what we were supposed to be doing was comparing the product to the claims, that's what the single crystal testing was for. But at the hearing, Judge Posner said, and this is the quote, it doesn't matter if it's the same product as the product that I enjoined, then you violated the injunction. It doesn't matter whether it's an oligomer, a polymer, a monomer, a pink elephant, or anything else. It just doesn't matter. That's page A-1880 in the appendix. If the issue is sameness, that's what's relevant under KSM in a contempt proceeding. But he said this was not about a contempt proceeding because there was no infringing act by Apotex. And this whole idea that Apotex is trying to induce FDA to do something, that was never raised below in the district court. We were not expecting to have to put forth evidence of sameness between the Apotex product and the Torfarm product. And the further problem that we were faced with is that what Judge Posner said at that hearing was not, I need you to convince me that you've got a non-infringing product. He wanted proof that we were using, that we had a different product under the old test that he had relied on in the earlier litigation. And that shows up at page A-2045 in the transcript. Dr. Atwood carried some clear burden of production by saying that the same test that convinced him last time that Torfarm was an oligomer convinces him Newpharm is the same thing. It's the same thing. It passes. It's satisfied on the same test, produces, you know, a melting point that's identical to one test, one degree off another, but that carries his burden of production, their burden of production. And the question is, what do you have? And I said to Judge Posner, if those are the kinds of tests that you want, I need time to run them. And that's what we did. When did you make the request for more time? Throughout the transcript. No, no. The hearing takes place on August 30th, as I understand it, the evidentiary hearing. Prior to that, Judge Posner identifies the issue of sameness. No. Oh, no. The issue of sameness only came up actually at the hearing. That was the first time we... When Judge Posner set the hearing date, the evidentiary hearing date, when was that? August 24th. Now, on August 24th, did you ask for additional time to hold, did you ask for the extension of time to present evidence at the evidentiary hearing? At the time when we got that notice, it was basically show up for an evidentiary hearing. Did you say we need more time? Well, at that point in time, I didn't even know what the issue was about. I didn't even know at that point in time that I would need the opportunity to do those tests. Did you ask Judge Posner to further identify the issues that would be adjudicated at the evidentiary hearing? No, we did not. Why not? Because I didn't even... This is such a hybrid, like hodgepodge proceeding. It's not something I'd ever encountered before in my practice. It wasn't a summary judgment hearing. It was being styled as a contempt proceeding, but it turned out to not be. It wasn't a traditional infringement action. I mean, this was basically a hatch-waxman action condensed into a one-day trial on six days notice. But if you're a litigator and you don't know what's going to be discussed at the hearing, you ask the judge to define the issue. That's basic. Judge Posner understood what was the issue. He held a hearing. He allowed all the parties to bring forward expert witnesses. There has to be a beginning and an end to an evidentiary hearing. What frustrates the trial judge is when you have an evidentiary hearing and then the parties want to continue with that hearing beyond the end date. Right, but one of the reasons why we ended the evidentiary hearing is because I said to Judge Posner, if you want these kinds of tests to show sameness, and not just any test, because, you know, we had the single crystal test, which we thought demonstrated non-infringement, but if you are not going to even get there unless we can show that there's differences between the new farm and the core farm product, I mean, these are not the type of tests where I can just pick up the phone, dial them up, and have them done in a day. But we went to extraordinary lengths to get these done. When did you first ask for extra time to get this additional testing done? Multiple locations throughout the trial. No, but when was the first time that you made that request? At the hearing? At the hearing. On August 31st. Right, because that was the point at the hearing where Judge Posner said, the point that I just read, which is that I don't care if it's a ligamer. All I want to know is, are you saying that these are different products? Because if you can't convince me these are different products, then you can basically pack up your stuff and go home. And that's the point where it became clear that, you know, if this is a contempt proceeding, then we need the opportunity to go do those kinds of tests. And I don't think that it's unreasonable to say, can we please have a week? And for what it's worth, it's not as though I was on notice of all the things that Dr. Abler was going to say at this hearing. He came up with all kinds of new theories as to what was wrong with the crystal structure and how to interpret the data that showed up nowhere in the expert reports before Judge Pallmeyer. But that's exactly the consequence of what happens when you have, you know, flawed proceedings are going to give you flawed results, is that we didn't have an opportunity to get the evidence that we needed. And when we did try to get what we could into Judge Posner within a week, which included melting point tests that showed the products were different, IR tests that said, you know, there's differences here, extra-cardiofraction tests. We did the molecular weight tests that he found, you know, dispositive in the prior case and showed that Dr. Abler was grossly underestimating molecular weight and it was much higher, which was consistent with Pallmeyer. And all of those test results were excluded? All of those were excluded. On what ground? I have no idea what the ground was. In his opinion, it just says, the district court said I did not authorize them and they are stricken. I thought that Stevens did run the x-ray diffraction test and that was testified to at the hearing. What he did is he ran the x-ray diffraction test and those. And the judge, I thought, found that the results were actually helpful to Abbott. Right. But they weren't. That was what Judge Posner said is, oh, Dr. Stevens testified that those were identical. That is not true. Dr. Stevens specifically said, I mean, his testimony was they're not identical. They are, there are differences. Is the essence of your case that you were caught by surprise during the hearing on August 31st and needed a week to put in some further tests to meet that surprise? Absolutely. All right. I thank both counsel. We'll take the case under advisory.